David Wawro (DW-3282)
Ian M. Goldrich (IG-5653)
TORYS LLP
237 Park Avenue
New York, New York 10017
Tel: (212) 880-6000
Fax: (212) 682-0200
Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
D.B. ZWIRN SPECIAL OPPORTUNITIES
FUND, L.P.,

           Plaintiff,

    - against -

TAMA BROADCASTING, INC.

           Defendant.
------------------------------------------------------------------ x

Civil Action No. 08 Civ. 3125(SAS)

# DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION, BY ORDER TO SHOW CAUSE, FOR APPOINTMENT OF A TEMPORARY RECEIVER

TORYS LLP
237 PARK AVENUE
NEW YORK, NEW YORK 10017
(212) 880-6000

ATTORNEYS FOR DEFENDANT

**Preliminary Statement**

Defendant Tama Broadcasting, Inc. ("Tama") respectfully submits this memorandum of law in opposition to Plaintiff D.B. Zwirn Opportunities Fund, L.P.'s ("DBZ") motion, brought on by order to show cause signed March 10, 2008, for the appointment of a temporary receiver under Rule 66 of the Federal Rules of Civil Procedure.[1]

DBZ's motion for the appointment of a temporary receiver to hold, manage, control and dispose of the Collateral (Plt. Mem. of Law at 5) should be denied because DBZ has failed to satisfy the heavy burden required to merit such draconian relief. The appointment of a federal receiver is an extraordinary equitable remedy that is only justified in extreme situations. It is not appropriate in the circumstances of this case where, as here, DBZ comes before this Court with unclean hands in that it has, in fact, caused the deterioration and mismanagement upon which it now relies for the appointment of a receiver.

In addition, granting DBZ's motion would result in a violation of federal law in that it could result in the transfer of control over broadcast licenses when such transfer is subject to the exclusive jurisdiction of the Federal Communications Commission ("FCC").

**FACTS**

The facts relevant to this memorandum of law are set forth in the accompanying Affidavit of Dr. Glenn W. Cherry, sworn to March 28, 2008.

---

[1] The Federal Rules of Civil Procedure apply to this motion notwithstanding that DBZ originally commenced this action in the Supreme Court of the State of New York, County of New York and made its motion pursuant to CPLR 6401. Tama removed this case to this Court on March 27, 2008 and, accordingly, federal procedural rules now govern.

**Argument**

I.  **DBZ SHOULD BE EQUITABLY ESTOPPED FROM SEEKING APPOINTMENT OF A TEMPORARY RECEIVER**

An overarching principle of federal receivership law is that the appointment of a receiver is an "extraordinary remedy [that] should be employed cautiously, and granted only when necessary to protect plaintiffs' interests in the property." *Rosen v. Siegel*, 106 F.3d 28, 34 (2d Cir. 1997) (internal quotations and citations omitted). *See also Gordon v. Washington*, 295 U.S. 30, 39, 79 L. Ed. 1282, 55 S. Ct. 584 (1935) (appointment of receiver appropriate only where there is a threatened loss or injury to property which only receivership would avoid); *Ferguson v. Tabah*, 288 F.2d 665, 674 (2d Cir. 1961) (appointment of a receiver is a "drastic remedy" to be imposed "only where no lesser relief will be effective.").

The appointment of a receiver is a wholly <u>equitable</u> remedy that, in federal court, is governed by federal equitable principles. *See, e.g. Ferguson v. Tabah*, 288 F.2d 665 (2d. Cir. 1965); *Varsames v. Palazzolo*, 96 F. Supp. 2d 361 (S.D.N.Y. 2000) (rejecting appointment of receiver under federal court's equitable power); *Brick v. Dominion Mortg. & Realty Trust*, 442 F. Supp. 283, 308 (W.D.N.Y. 1977) ("the appointment of a receiver is an extraordinary form of equitable relief"). *See also Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993) ("appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles").

Accordingly, when a party seeks equitable relief, it submits itself to the operation of equitable rules. *See Asbestosis Claimants v. U.S. Lines Reorg. Trust*, 318 F.3d 432, 437 (2d Cir. 2003) ("it is well-established that a litigant who seeks equity must do equity"); *McNamee, Lochner, Titus & Williams. P.C. v. Higher Educ. Asst. Fund*, 50 F.3d 120, 125 (2nd Cir. 1995) (same). Courts will deny equitable relief to a party with unclean hands. *See The Mediators v.*

2

*Manney (In re The Mediators)*, 190 B.R. 515, 530 (S.D.N.Y. 1995) ("the doctrine of 'clean hands' is an established and salutary tenet of equity practice"), *aff'd* 105 F.3d 822 (2d Cir, 1997); *Securities & Exch. Comm'n v. Wills*, 472 F. Supp. 1250, 1276 (D.D.C. 1978) (court invoked rule that "he who seeks equity must do equity" against SEC in denying request for injunction and disgorgement by defendants).

Here, DBZ comes before this court having unclean hands, undeserving of any equitable relief, much less the drastic remedy of receivership. As set forth in the accompanying Affidavit of Dr. Glenn Cherry, Chief Executive Officer of Tama, sworn to March 28, 2008 (the "Cherry Affidavit"), since 2006, DBZ and Tama's equity partner, Black Enterprise/Greenwich Street Fund, L.P., ("BE/GS") have been engaged in an effort to restructure the Amended Financing Agreement and to wind up the Tama entities' affairs. (Cherry Aff. ¶ 7) As a part of this internal restructuring, at DBZ's insistence, Tama executed a Local Marketing Agreement ("LMA"), dated as of September 10, 2007, with DBZ affiliates Bernard Radio LLC (and, after an assignment from Bernard Radio), with Straight Way Radio LLC. (*Id.* ¶ 8, Ex. 1).

At the time Tama executed the LMA, DBZ had agreed to ensure that Tama's financial position would not further deteriorate, and that DBZ would advance additional money if necessary to cover any financial shortfalls while restructuring talks continued. (*Id.* ¶ 9) Almost immediately after execution of the LMA, however, Bernard Radio/Straight Way, and DBZ's consultant Chris McMurray, took complete control of Tama's nine radio stations in ways that may, in fact, violate FCC rules and regulations. (*Id.* ¶ 10) In short, it was DBZ, its affiliates (Bernard Radio/Straight Way), and McMurray, not Tama, who "grossly mismanaged" Tama's properties and put its FCC licenses—and its ability to continue to broadcast—at risk.

As described more fully in the Cherry Affidavit, soon after execution of the LMA, McMurray—DBZ's agent—specifically (a) refused to deal directly with Tama management with respect to Tama's operations, (*id.* ¶ 12); (b) unilaterally canceled programming for, and implemented format changes at, multiple Tama radio stations—notwithstanding that such actions violated programming agreements to which Tama was a party, (*id.* ¶ 14); (c) diverted payments from Tama customers to DBZ bank accounts with Tama's knowledge or approval, (*id.* ¶ 15); and (d) unilaterally instituted cutbacks in working hours of Tama personnel, (*id.* ¶ 16).

DBZ has also refused to reimburse Tama for operating expenses, including tower rents and studio rent, as required by the LMA. (*Id.* ¶ 17) Moreover, DBZ is responsible for the tower and studio rents owed to Group Assets LLC (*see* Affidavit of Peter Leibman, Ex. C), not Tama. (*Id.* ¶ 18) DBZ's non-payment further jeopardizes Tama's ability to continue broadcasting. (*Id.*) Prior to the LMA, when Tama was responsible for such rents, they were timely paid. (*Id.* ¶ 18)

In her affidavit, McMurray states that Tama is in arrears in payment to Arbitron, a radio ratings service. (McMurray Aff. ¶ 7(d)) It was McMurray herself, however, using Tama's authorization to Arbitron's intellectual property, that caused Tama to incur approximately $120,000 of those outstanding costs. (*Id.* ¶ 19)

DBZ's apparent reliance on the contract provision for appointment of a receiver is misplaced. On motions for the appointment of a receiver in similar lender-borrower contexts, equitable principles—not contractual terms—governed. *See Federal Home Loan Mortg. Corp. v. Jerwin Realty Assoc.*, CV-92-4626 (CPS), 1992 U.S. Dist. LEXIS 19207 (E.D.N.Y., December 14, 1992) (denying motion for appointment of receiver, notwithstanding that mortgage provided for appointment of receiver upon default, where lender did not establish that

4

collateral would be injured or destroyed in the absence of a receiver). *See also Whelpley v. Eris Ry. Co.*, 29 F. Cas. 918, 920 (Fed. Cir. Ct. N.Y. 1868) (court rejected the notion that an injunction or receiver could be ordered "in an improper case" even with the consent of both parties). Consistent with these principles and the foregoing decisional authority, receivership is not necessary, nor it equitable, just or fair in view of DBZ'S deceptive conduct toward Tama.

In sum, the financial and operational damage done to Tama is directly due to the improper actions of DBZ outlined above. Under the circumstances, to allow a temporary receiver to be appointed by this court as selected by DBZ would allow DBZ to benefit from its own wrongful conduct.

## II. DBZ HAS FAILED TO MEET THE BURDEN REQUIRED FOR THE APPOINTMENT OF A TEMPORARY RECEIVER

Even if DBZ was not estopped from seeking the appointment of a temporary receiver receivership, it has failed to meet the heavy burden required to merit such relief under Rule 66. *See Meineke Disc. Muffler Shops, Inc. v. Noto*, 603 F. Supp. 443, 444-45 (E.D.N.Y. 1985) ("[i]n assessing plaintiff's burden, I am directed to the admonition that "the appointment of a receiver 'is, like an injunction, an extraordinary remedy, and ought never to be made except in cases of necessity, and upon a clear showing that [an] emergency exists, in order to protect the interests of the plaintiff in the property") (*quoting Wickes v. Belgian American Educational Foundation, Inc.*, 266 F. Supp. 38, 40 (S.D.N.Y. 1967)).

The following factors are among those considered relevant to establishing the need for a receivership in this Court:

> Fraudulent conduct on the part of defendant; the imminent danger of property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more

> general plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

*Varsames v, Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000) (quoting CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2983 (1973) (citations omitted)). *See also Hollywood Healthcare Corp. v. Deltec Inc.* Civ. No. 04-1713, 2004 1713, 2004 U.S. Dist. LEXIS 8725. *31 (D. Minn. 2004) (court denied appointment of receiver where plaintiff did not show "sufficient probability" that fraudulent conduct had occurred, that its property interests were in imminent danger of being concealed, lost or diminished, and because plaintiff had "available adequate legal remedies—*i.e.*, exercising its rights as a secured party under the Uniform Commercial Code and seeking damages at trial").

Here, first and foremost, DBZ has not alleged, nor could it allege, any fraudulent conduct on the part of Tama. Moreover, the relevant property is not in danger of being lost, concealed, injured, diminished in value, or squandered. On the contrary, despite DBZ's interference as detailed forth above, Tama has actually improved many aspects of its business over the last years. (*See* Cherry Aff. ¶ 31 (noting that Tama has fielded inquires from other well-qualified radio groups who are willing to enter into LMA's that would allow Tama to improve its financial condition pending restructuring or sale)).

With regard to Tama's broadcasting equipment, contract engineers in all three Tama markets will attest that Tama has purchased four new transmitters (of the nine required for Tama's nine stations) over the past five years. (*Id.* ¶ 20). Two of stations have transmitters that are less than ten years old and the oldest transmitter in the Tama organization is an upgraded 1992 model, which is still well within radio industry standards. (*Id.*)

Tama's contract engineers keep maintenance logs on service of all transmitting facilities and report that all equipment is operational and serviceable. (*Id.* ¶ 21) All nine Tama

transmitters are currently on the air, running at full power and in compliance with FCC technical guidelines. (*Id.*) Moreover, in its eight-year history, Tama has never been cited by the FCC for violation of any applicable rule or regulation. (*Id.* ¶ 22)

Contrary to the McMurray Affidavit, the construction permits issued by the FCC have not expired. They allow three years for Tama to study the cost-benefit of relocating signals to improve coverage. (*Id.* ¶ 23) In this time of declining value of broadcasting properties, Tama is still assessing whether the value added to the stations outweighs the cost of the construction. (*Id.*) In addition, Tama currently owns only one tower that was recommended to be painted, and the painting is scheduled for completion later this year. (*Id.* ¶ 24) The two other towers referenced in the McMurray Affidavit are leased and Tama is negotiating with the ultimate owners to have them painted. (*Id.*) Furthermore, the personal property taxes are overdue on equipment Tama owns in Jacksonville only. (*Id.* ¶ 25) The taxes are no threat to Tama and a payment plan can be worked out with Duval County, Florida. (*Id.*)

Additionally, DBZ has not shown that it lacks adequate legal remedies. Nor has DBZ made any showing that the Collateral, or DBZ's interest therein, would be better served by a receiver. *See Commodity Futures Trading Com. v. Comvest Trading Corp.*, 481 F. Supp. 438 (D. Mass. 1979) (court denied appointment of receiver because it found that a receiver would not materially add to the relief previously granted, and plaintiff failed to present a plan or proposal for the compensation of the receiver). DBZ is fully able to exercise it rights as a secured party with respect to the Collateral by seeking damages and judgment at trial. *See Lipsius v. Lithographers' Finishing Co.*, 78 Civ. 3627 (CSH), 1978 U.S. Dist. LEXIS 15800 (S.D.N.Y August 30, 1978) (court denied application for appointment of receiver where damages were compensable by money). *See also Hollywood Healthcare Corp. v. Deltec, Inc.*, 04 Civ. 1713,

2004 U.S. Dist. LEXIS 8725, at *31 (D. Minn. 2004). DBZ may be entitled to recover on its rightful investment, but it should be permitted to abridge all due process rights of Tama by utilizing summary procedures and draconian remedies to oppress a financially distressed borrower. Consistent with the foregoing decisional authority, DBZ has not carried its burden of establishing that a receivership necessary and warranted in the present case.

### III. PERMITTING A RECEIVER TO TAKE CONTROL OF TAMA'S BROADCAST LICENSES VIOLATES THE COMMUNICATIONS ACT OF 1934

Permitting a receiver to take immediate control of the collateral would violate FCC policy and the Communications Act of 1934 (the "Communications Act"). The purpose of the Communications Act is to ensure that the federal government maintains appropriate administrative control of the national airwaves. *See Federal Commun. Comm'n v. Midwest Video Corp.*, 440 U.S. 689 (1979). Congress granted the FCC broad authority to regulate radio transmissions when it passed the Communications Act, *see id.* at 696, and when it gave the FCC exclusive authority over licensing. *See Radio Station WOW, Inc., v. Johnson*, 326, U.S. 120, 127 (1945).

Anyone seeking to transfer an FCC license must comply with Section 310(d) of the Communications Act. 47 U.S.C. § 310(d). Section 310(d) expressly provides that no licenses

> or any rights thereunder, shall be transferred, assigned, or disposed of in any manner, voluntarily or involuntarily, directly or indirectly, or by transfer of control of any corporation holding such permit or license, to any person except upon application to the Commission and upon finding by the Commission that the public interest, convenience, and necessity will be served thereby.

*Id. See also id.* § 402(b) (providing that FCC decision granting, denying, modifying, or revoking radio licenses are reviewable exclusively by United States Court of Appeals for the District of Columbia); *In re Tak Commun. Inc.*, 138 B.R. 568 (W.D. Wisc. 1992) (noting that FCC prohibits

8

secured parties from taking possession of licenses), *aff'd*, 985 F.2d 916 (7th Cir. 1993); *Big League Broadcasting Co. v. Shedd-Agard Broadcasting, Inc.* 313 So.2d 247 (La. App. Ct. 1975) (holding that court may not order, without FCC consent, transfer of radio license, or any right granted thereunder, such as right to assert ultimate control over programming, finance or personnel). *But see 4 State St. Bank & Trust Co. v. Arrow Commun., Inc.*, 833 F. Supp. 41 (D. Mass. 1993) (noting that licenses are part of bankrupt entities estate and that FCC may approve receiverships of bankrupt licensees).

In determining whether or not an unauthorized transfer of control has occurred, the Commission looks to any act or agreements vesting in someone other than the licensee the right to operate the radio station, indicia of which includes the ultimate control over programming, personnel and finances. *See, e.g., WHDH, Inc.* 17 FCC 2d 856 (1969), *aff'd sub nom Greater Boston Television Corporation v. Fed. Commun. Comm'n*, 44 F.2d 841 (D.C. Cir. 1971).

Here, the appointment of a receiver to hold Tama's licenses, (*see* Compl. ¶ 17), would run afoul of the broad prohibitions on the transfer of licenses set forth in Section 310(d). Notwithstanding that Section 310(d) expressly requires application to, and approval from, the FCC prior to the transfer or disposition of Tama's licenses "in any manner, voluntarily or involuntarily, directly or indirectly," 47 U.S.C. § 310(d), DBZ does not even allege that it has made such an application to the FCC—much less obtained the required approvals. Absent such approvals, Tama is required by law to maintain control of its licenses. Accordingly, DBZ's motion should also be denied on this independent ground.

## IV. THERE IS SUBSTANTIALLY SIMILAR LITIGATION ALREADY PENDING IN FLORIDA FEDERAL COURT

Finally, DBZ has failed to inform this Court that litigation concerning the same transactions and issues asserted in this action is already pending in the United States District Court for the Southern District of Florida. *See Tama Radio Licensees of Jacksonville, Fl., Inc., et al. v. D.B. Zwirn Special Opportunities Fund, L.P.*, Civil Action No. 2008-CA-75 (S.D. Fla.). Soon after the LMA was executed in September 2007, respective legal counsel to DBZ and BE/GS drafted and circulated a written proposed restructuring agreement that was not presented to Tama until late January 2008. (Cherry Aff. ¶ 26) On or about January 29, 2008, DBZ, through its legal counsel, delivered a Notification of Public Disposition (the "Notification") of the same collateral that is the subject matter of this request for receivership. (*Id.* ¶ 27) The collateral was to be sold at "public" auction at the offices of DBZ's New York legal counsel. (*Id.*) This fact is also omitted from DBZ's motion papers.

During the midst of the restructuring negotiation, Tama requested that the Notification and its amendment be rescinded. (*Id.* ¶ 28) DBZ and their counsel informed Tama that they would consider rescinding the Notification and its amendment if further progress could be made in the restructuring negotiation. (*Id.*)

Tama objected to the time, place, and manner of the sale and subsequently filed a Complaint for Injunctive Relief and a motion for temporary injunction to prevent the sale. The motion was denied by a Florida state trial court. However, Florida's First District Court of Appeal stayed the sale pending an interlocutory appeal. DBZ subsequently removed the state court proceeding to the U.S. District Court for the Northern District of Florida, where it remains pending. (*Id.* ¶ 29) Given the potential for conflicting results between this Court and the Florida court, we believe this Court should deny DBZ's motion, or at the very least hold it in abeyance,

pending resolution of Tama's forthcoming motion to transfer and consolidate this action with the already-pending Florida action.

## Conclusion

For the foregoing reasons, Plaintiff D.B. Zwirn Special Opportunities Fund, L.P.'s motion for the appointment of a temporary receiver should be denied.

Dated: New York, New York
       March 28, 2008

TORYS LLP

By: _____
    David Wawro
    Ian M. Goldrich

237 Park Avenue
New York, New York  10017
(212) 880-6000

Attorneys for Defendant Tama Broadcasting, Inc.

Of Counsel:

Charles W. Cherry II, Esq.
Law Office of Charles W. Cherry II
5200 SW 18th Street
Plantation, Florida 33317
Tel:  (813) 367-7342
Fax: (954) 583-9667

8447170

11